DEAN and others, Appellants, vs. BROOKS, Respondent.

*September 5 — December 11, 1894.*

*Vendor and purchaser of land: Setting aside deed for fraud.*

The evidence in this case is *held* to show that a conveyance by an heir of his interest in the estate of his ancestor, made in ignorance of the value of lands devised by the ancestor for public parks and of an arrangement for contesting the validity of the devise, was induced by concealment, deceit, and misrepresentation, and should be set aside.

APPEAL from the Circuit Court for *Douglas* County.

Peter Dean died at his residence in Duluth, January 4, 1884. He left no widow or children. He had four brothers and one sister, to wit, Thomas, Dennis, John, Alexander, and Mary. Thomas and Mary were still living, and resided in New York City. Dennis was still living, and resided at Superior. John and Alexander were both dead, and each left three children as his heirs at law. The children of Alexander all resided in New York City. The children of John resided in Milwaukee and Cleveland.

On January 1, 1884, the said Peter Dean executed his last will and testament, wherein, after providing for his debts, funeral expenses, and a monument, he bequeathed to his sister, Mary, his copper and bank stocks and money sufficient therewith to amount to $25,000. He devised to the city of Superior 240 acres of land, to be used by the city for public purposes, and to Duluth certain lots in trust

to be sold and the proceeds thereof used for the purchase and beautifying of parks in Duluth for the use of the inhabitants of said city. Said real estate, in the aggregate, was of the value of $80,000. On February 6, 1884, said will was admitted to probate, and August 25, 1887, a final settlement of the debts, legacies, and expenses of said estate was made, but the residue thereof was not disposed of.

The defendant is the son-in-law of said Dennis, and resides at Superior. In the winter of 1889 the defendant and his father-in-law, Dennis, believing that the devises to. Duluth and Superior were void, commenced negotiating for the purchase of the interest which the three children of the deceased brother John had in said estate. The result of said negotiations was that on or about April 20, 1889, the defendant obtained from the three children of John a conveyance of their interest in said estate, as mentioned in the case of *Allen v. Brooks, ante*, p. 265. The defendant called upon the plaintiff, Thomas, in New York, April 23, 1889, and commenced negotiating with him for the purchase of his interest in said estate, and, as a result, the plaintiff, on or about August 7, 1889, agreed to sell and convey, and thereupon did sell and convey, his interest in said estate to the defendant for $300 cash, and, in case the defendant acquired title by law, then $900 in addition.

On August 8, 1890, Dennis, Mary, the three children of Alexander, and the defendant began a suit in the circuit court for Douglas county against the city of Superior to have said devise to Superior declared to be void. On October 22, 1890, the circuit court overruled a demurrer to the complaint therein. The defendant thereupon answered, and on the trial the circuit court found and held that said devise to Superior was void, and judgment was thereon entered accordingly, and the said city thereupon appealed from said judgment to the supreme court, and, pending that appeal, the same was settled by the parties. On June

5, 1891, the said Dennis, Mary, the three children of Alexander, and the defendant petitioned the probate court of St. Louis county to have said devise to Duluth declared void, and upon the hearing thereof, after due notice, the same was, August 4, 1891, declared to be void.

After the circuit court for Douglas county held the devise to Superior void, the plaintiff tendered back to the defendant the consideration for the deed mentioned, and demanded a reconveyance, on the ground that such deed had been so obtained by fraud and deceit practiced by the defendant upon the plaintiff, and thereupon commenced this action to set aside said deed, upon the grounds mentioned. The defendant answered, and on the trial the court found, in effect, that the evidence failed to show such fraud or deceit, and rendered judgment in favor of the defendant, from which judgment the plaintiff, Thomas, appealed to this court. Pending the appeal, Thomas died, and thereupon his three children and heirs at law were substituted as plaintiffs in his place.

For the appellants there was a brief by *Reed, Grace & Reed* and *John O. Winship*, and oral argument by *H. H. Grace* and *Mr. Winship*.

*Champ Green*, for the respondent.

The following opinion was filed October 2, 1894:

CASSODAY, J. In September or October, 1888, the defendant married the daughter of the testator's brother Dennis. Dennis had no other child, and from that time on he made his home with the defendant in Superior. Soon after the marriage, if not before, Dennis made an arrangement with an attorney at Superior to test the validity of the devises mentioned in the foregoing statement. That arrangement, according to the testimony of Dennis, was to the effect that the attorney should prosecute the suit and pay all costs and expenses, and have for his compensation

one third of all he might recover as the share of Dennis. It appears to have been understood, however, at the time, that Dennis should try and induce the other heirs to join in making such contest. Dennis appears to have been in poor health, and accordingly wanted the defendant to join with him in securing from the estate what he could, and so communicated the arrangement he had so made with his attorney to the defendant, and suggested that he should become interested in the enterprise. Soon after, Dennis visited the heirs in New York, and sought to induce them to join in making the contest. They were all in good financial circumstances, except Thomas. He was over seventy years of age, had no property, and in 1889 was working as a janitor of a school building, at $92 per month. He had two daughters, living with him at the time, and a son. In January, 1889, Dennis visited his nephew in Milwaukee, and induced him, in behalf of himself and his two sisters in Cleveland, to open correspondence and negotiations with the defendant for the sale and conveyance to him of their interest in the estate. Such sale, after considerable correspondence, was finally consummated in a personal interview between the defendant and the nephew in Milwaukee, April 20, 1889. Three days afterwards, the defendant called upon Thomas, in New York, and told him he had bought out the Milwaukee and Cleveland heirs upon the terms mentioned, and offered to buy out his interest on the same terms. Thomas replied that he would do as his sister Mary did, or that he would think it over and probably do as Mary and Dennis advised. There is no claim that Thomas was informed as to the value of the lands so devised, nor that the defendant's attorney's fee of $3,000 was contingent upon recovery. The defendant testified to the effect that he *thinks* he told Thomas of the arrangement which Dennis had made with his attorney, but such testimony is inconsistent and far from being plausible.

Besides, it is contrary to the whole tenor and effect of the testimony given by Thomas. According to his testimony, there was not a word said to him about contesting, nor that there was any plan to contest it. He also testified to the effect that the defendant intimated that the property did not amount to much,— that a good deal of it was given to the authorities for a park. Under such circumstances, Thomas, through his sister's husband and Dennis, accepted the proposition so made to him by the defendant nearly four months previously; and thereupon the defendant wrote Thomas, under date of August 7, 1889, to the effect that he would make out and forward papers for his signature, and pay the consideration upon delivery of the deed to the bank; that matters stood the same as when he was in New York; that little could be done unless all joined in a determined effort to secure their rights; and stating in a postscript, among other things, "I enclose in deed all property filed in probate office, though *the better* part has unquestionably been sold and condemned." On cross-examination, the defendant quibbled about this statement, but virtually conceded that it was false as written. This false statement in the letter corroborates the testimony of Thomas as to the conversation between him and the defendant. It is very important whether Thomas was induced to make the sale upon the representation that "*the better* part " of the lands had been "sold and condemned," or that only " part " of the lands had been "sold and condemned." It appears that the defendant put in evidence a supposed copy of the letter in which the words "*the better*," in italics, were omitted, and that subsequently the plaintiff put in evidence the original letter; and that it was thereupon "agreed by the parties that the original letter to Thomas Dean, dated August 7, 1889, should be substituted for the copy." Nevertheless, the learned trial court, by some inadvertence, appears to have overlooked the fact, and so finds that the copy was the letter sent.

Such is a general outline of the leading facts in evidence. We refrain from going into details, but are all constrained to believe that Thomas was induced to make the conveyance by the concealment, deceit, and misrepresentation of the defendant and those acting in conjunction with him. This is the only question calling for consideration in the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment according to the prayer of the complaint.

A motion for a rehearing was denied December 11, 1894.